**2022-CC10487**

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

## IN THE CIRCUIT COURT OF SAINT LOUIS CITY, MISSOURI
## CIRCUIT JUDGE DIVISION

| | | |
|---|---|---|
| **ANTHONY PRUITT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| **vs.** | ) | |
| | ) | |
| **XPO LOGISTICS FREIGHT, INC.** | ) | **JURY TRIAL DEMANDED** |
| **Serve:** | ) | |
| **Registered Agent Solutions, Inc.** | ) | |
| **3225 - A Emerald Lane** | ) | |
| **Jefferson City, Missouri, 65109** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S PETITION
## FOR VIOLATIONS OF THE MISSOURI HUMAN RIGHTS ACT

COMES NOW, Plaintiff, Anthony Pruitt, individually and on behalf of all others similarly situated, by and through undersigned counsel, for their Petition against XPO Logistics Freight, Inc., states:

1.      Defendant is an employer as defined by the Missouri Human Rights Act (MHRA), 213.010 et seq.

2.      Defendant engages in a pattern and practice of discriminating against African American employees and job applicants.

3.      Plaintiff seeks to recover damages including, but not limited to, reinstatement, backpay, front pay, emotional distress, and punitive damages on behalf of himself and other persons of color and minorities, including African Americans, who XPO has failed to hire, terminated, threatened to terminate, asked to resign, failed to promote, failed to train, differently enforced policies, or otherwise discriminated against, or retaliated against.

## JURISDICTION AND PARTIES

1

Electronically Filed - City of St. Louis - December 10, 2020 - 03:23 PM

4.      Plaintiff, Anthony Pruitt is an individual who is and was at all times herein after mentioned, a resident of the State of Missouri.

5.      Defendant XPO, LLC ("XPO") is a corporation licensed to do business in the state of Missouri that at all relevant times herein conducted business within Saint Louis City, Missouri.

6.      Venue is proper pursuant to §508.010 and §213.111 R.S.Mo. because a substantial part of the events giving rise to this cause of action occurred in Saint Louis City, Missouri.

7.      Jurisdiction is proper pursuant to the Missouri Human Rights Act, § 213.010 R.S.Mo., et seq. (MHRA).

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff worked for XPO Logistics Freight, Inc. beginning in June 2019.

9.      Plaintiff worked in the position of a breaker, which involved unloading shipping trailers at their warehouse at 8390 Hall Street in Saint Louis, Missouri.

10.     Plaintiff is an African American.

11.     XPO discriminates against its African American employees.

12.     In October 2019, a Caucasian coworker named Andre Gitcho harassed and threatened Plaintiff.

13.     Plaintiff reported the harassment to the human resources department, however, they refused to address the situation.

14.     XPO reassigned Plaintiff to a loader position in October 2019.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

15.    A female Caucasian worker Amber refused to build a rack and told Plaintiff to build the rack himself.

16.    Plaintiff complained to management that Amber would not build the rack.

17.    Amber later told Plaintiff that if Plaintiff said anything to her she would get Plaintiff fired for sexual harassment, which was witnessed by one of the drivers.

18.    Plaintiff reported the incident to management.

19.    Plaintiff followed up with human resources a couple of days later; HR and would not tell Plaintiff what action they were taking.

20.    Plaintiff told the XPO human resources that Plaintiff was frustrated.

21.    XPO moved Plaintiff back to the position of breaker in November 2019.

22.    After the situation with Amber, Plaintiff noticed how the company refused to address complaints by African American employees.

23.    Plaintiff told HR that there was differential treatment based on his race and color, including the enforcement of rules against African Americans but not the Caucasian workers.

24.    An example of differential treatment was XPO managements nonuniform enforcement of lunch break time.

25.    The lunch break was 30 minutes long.

26.    Caucasian workers were permitted to take long lunches and get paid during their lunch break.

27.    Plaintiff and other African American workers were not permitted to take longer lunches or take lunch breaks on the clock.

28.    XPO gave Plaintiff a reprimand for taking a long lunch.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

29.     Plaintiff's manager did not harass or reprimand the Caucasian workers who took long lunches.

30.     Plaintiff complained about the differential treatment to HR and on the ethics point hotline.

31.     After Plaintiff complained to HR and the ethics point hotline, management began to single Plaintiff out more.

32.     African American employee Steve Gooden experienced similar harassment and discrimination.

33.     Gooden and Plaintiff were often paired as partners.

34.     XPO typically assigned African American workers together.

35.     XPO assigned the lighter trucks to the Caucasian workers and gave the African American workers the heavy trucks.

36.     Plaintiff complained about the differential treatment.

37.     XPO puts assignments on a bulletin board.

38.     Typically, the outbound shift closed around 8:30 or 9:00.

39.     Plaintiff typically took lunch at this time.

40.     There would be assignments for the FAC shift, and if there were no assignments, then the workers could leave for the day.

41.     Gooden and Plaintiff took lunch after they finished their outbound trucks.

42.     When Gooden and Plaintiff came back, they checked the boards and the manager's sheet.

43.     They did not have any assignments, so they left for the day.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

44.     The next shift the managers called Gooden and Plaintiff to the office and accused them of job abandonment.

45.     Gooden and Plaintiff complained to the branch manager and he determined that management was at fault for not assigning them work.

46.     The next day XPO management had a meeting with Gooden and Plaintiff and told them that they needed to have permission to go to lunch and to be dismissed at the end of the shift.

47.     Management reprimanded Plaintiff later that day.

48.     Gooden told the Freight Operations Supervisor ("FOS") Ryan Reavey that he and Plaintiff finished their truck and asked if we could leave.

49.     Ryan Reavey released them.

50.     After Plaintiff clocked out, Ryan told Plaintiff to unload another trailer because Plaintiff did not ask him personally to be released.

51.     Caucasian workers had also left without asking permission to leave without repercussion.

52.     XPO wrote Plaintiff up for job abandonment.

53.     A Caucasian worker, Tony Wise, took lunch without asking permission and left without breaking down his FAC truck and did not get written up.

54.     Another day, the last outbound truck had not arrived the "99 truck".

55.     Other breakers were breaking down their FAC trucks.

56.     XPO made Plaintiff break down the 99 truck while the other workers were not required to help.

57.     Typically, all the breakers work on the final truck.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

58.    This caused Plaintiff to have to stay late, while the Caucasian workers did not have to.

59.    Plaintiff complained that Plaintiff was being treated differently.

60.    XPO "took Plaintiff out of service" from December 30 through January 8, which was their terminology for a suspension.

61.    Plaintiff complained to the ethics point hotline while Plaintiff was on break about the discriminatory and differential treatment that Plaintiff and other African American workers faced.

62.    When Plaintiff returned on January 8 HR told Plaintiff that they had investigated his complaint and could not find any evidence of any bias or discriminatory actions towards Plaintiff, which is an indication of XPO's pattern and practice of turning a blind eye to discrimination by their management.

63.    XPO told Plaintiff that Plaintiff had been taken out of service for being "disruptive to the workplace" a reference to his valid complaints of discrimination and differential treatment.

64.    Shortly after Plaintiff returned, Plaintiff used the restroom.

65.    The Freight Operations Manager ("FOM") Sean Kelly gave Plaintiff a verbal warning and told Plaintiff that Plaintiff needed to ask permission to use the restroom.

66.    Management did not harass Caucasian workers about taking bathroom breaks or require them ask permission to take one.

67.    Shaun said he would be glad if Plaintiff quit so that he would not need to deal with Plaintiff anymore and that XPO did not chose Plaintiff, that Plaintiff chose XPO.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

68. The next week, Plaintiff noticed several Caucasian workers had taken a long lunch and had been gone approximately 45 minutes.

69. Plaintiff spoke with the FOL Kyle why the Caucasian workers were able to take a long lunch. He told Plaintiff to mind my own business.

70. Plaintiff spoke with FOL Zack about the Caucasian workers taking long lunches and Zack shrugged it off.

71. Plaintiff told Zack that it was funny that they allowed the Caucasian workers to take long lunches, but Plaintiff had to ask permission to use the restroom.

72. Plaintiff then spoke with supervisor Chris, who said that he would document it and put an email in.

73. Zack later admitted that they came back late and said they would be more mindful.

74. XPO had previously terminated an African American worker for allegedly stealing 15 minutes of time.

75. Plaintiff brought this to the attention of management and that they were treating the Caucasian workers more favorably.

76. Plaintiff made another ethics point complaint regarding this differential treatment.

77. Plaintiff saw the district manager Nick Yetsko on Tuesday February 11 and asked to speak with him.

78. Nick said he would meet with Plaintiff and the branch manager the next day at 2:30, however he never met with Plaintiff.

79. On Thursday February 13, Branch Manager Chris Gula and HR Shaun met Plaintiff.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

80.     XPO told Plaintiff to worry about himself and said that they reviewed Plaintiff's allegations and that his allegations were false.

81.     Plaintiff told them that Zack admitted they came back late to lunch and that an African American worker was terminated for similar actions and that this was further evidence of discrimination.

82.     On February 11, Plaintiff had requested off for February 14th, Plaintiff spoke with FOM Shaun Pekarik and HR Sean Kelly.  There had been a fire at Plaintiff's house, and he needed off to move his family.

83.     XPO said they knew Plaintiff's situation and would get back with Plaintiff later in the week.

84.     On Thursday Plaintiff spoke with HR Sean Kelly, who told Plaintiff needed to speak with Chris Gula.

85.     Chris Gula told Plaintiff to make a pallet on the floor and move during the weekend and come into work tomorrow.

86.     Plaintiff called in on Friday and spoke with Chris Gula, who said he got an email that Plaintiff left early on Wednesday without permission.

87.     Plaintiff told Gula that was not true, and that Plaintiff swept the trailers out.

88.     FOL Ryan Jennings told that the trailers were not even his and that Plaintiff could leave.

89.     On Monday February 17, 2020, Plaintiff asked Chris Gula if he got the situation straightened out.

90.     Chris Gula said he had not spoken with Ryan Jennings yet.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

91.     Plaintiff noticed that Cody got a new pair of boots and complimented him on the new boots.

92.     Cody replied that "You are watching everything, even my boots."

93.     Cody was one of the workers who Plaintiff noticed had taken the long lunch.

94.     Plaintiff went to HR because Plaintiff was worried that Plaintiff was being wrongfully accused of wrongdoing.

95.     Plaintiff had heard that management was trying to build a paper trail to get Plaintiff fired, he discussed this with HR, who said that that was not case.

96.     Plaintiff went back to work and went to the board to get his assignment.

97.     The new FOL handed Plaintiff his assignment and told Plaintiff that he was trying to get rid of the heavy loads.

98.     Plaintiff asked Shaun why Plaintiff was being assigned the heavy load to which Shaun replied, "he we go again".

99.     The FOL stated that "I haven't been here a week and you are already giving me problems."  It was obvious that they viewed Plaintiff as a troublemaker because of his complaints of discrimination.

100.    Plaintiff went to HR and complained how they were treating and talking towards Plaintiff.

101.    HR Shaun Pekarik took Plaintiff to Branch Manager Chris' office.

102.    FOM Sean Kelly stated that Plaintiff was being disruptive in the workplace. Plaintiff asked how Plaintiff was being disruptive and pointed out that nobody said Plaintiff was being disruptive until Plaintiff complained about them.

103.    XPO then took Plaintiff out of service.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

104.    Chris Gula and Dave from HR terminated Plaintiff on February 26, 2020 via telephone, they alleged that Plaintiff was taken out of service for disruption of the workplace.

105.    Steve Gooden ultimately resigned due to the differential treatment.

106.    XPO terminated Gooden when he put in two weeks' notice.

107.    Caucasian workers were permitted to work during their two-week notice.

108.    Plaintiff filed for unemployment benefits through the Missouri Department of Labor.

109.    Plaintiff was initially denied unemployment benefits because XPO told the Division of Employment Security that Plaintiff had been terminated for causing a disturbance in the workplace.

110.    Plaintiff appealed the denial of his unemployment.

111.    After a testimony hearing for Division of Employment Security the appeals referee overturned the denial and found that Plaintiff "had been involved in a discussion with management about allegations he had brought to their attention. The [Plaintiff] credibly testified he was speaking up, but not yelling."

## COUNT I – VIOLATIONS OF THE MHRA FOR DISCRIMINATION

112.    Plaintiff restates all previous paragraphs of his petition herein.

113.    This Count is brought pursuant to the Missouri Human Rights Act (MHRA), Chapter 213 of the Missouri Revised Statutes.

114.    Section 213.055 R.S.Mo. states in relevant part "It shall be an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,  national origin, sex, ancestry, age or disability" and

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

"[t]o limit, segregate, or classify his employees or his employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability".

115.  Defendant XPO is an employer as defined by the MHRA.

116.  Plaintiff timely filed charges of discrimination with the MCHR.

117.  The MCHR issued Plaintiff a right to sue.

118.  At all relevant times herein, the Defendant XPO was an employer as defined by the MHRA.

119.  Plaintiff is a member of the class of people intended to be protected by the Missouri Human Rights Act, including, section 213.010, *et seq.*

120.  Defendants discriminated against Plaintiff based upon his race and color including, but not limited to:

a.  Reprimanding Plaintiff;

b.  Harassing Plaintiff;

c.  Suspending Plaintiff;

d.  Assigning Plaintiff less desirable job assignments;

e.  Assigning Plaintiff heavy loads;

f.  Requiring Plaintiff to unload trucks without assistance;

g.  Requiring Plaintiff to ask permission to use the restroom;

h.  Requiring Plaintiff to ask permission to go to lunch;

i.  Requiring Plaintiff to ask permission to leave;

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

j.      Requiring Plaintiff to take a 30-minute lunch while allowing Caucasian workers to take longer lunches;

k.      Harassing Plaintiff;

l.      Allowing Plaintiff's coworkers to harass Plaintiff;

m.      Accusing Plaintiff of being disruptive;

n.      Failing to investigate Plaintiff's complaints of discrimination;

o.      Terminating Plaintiff.

121.    Defendant and its agents and employees subjected Plaintiff to discriminatory actions as stated above.

122.    The discrimination of the Plaintiff affected a term, condition, or privilege of his employment.

123.    Defendant took discriminatory actions towards the Plaintiff because of his race and color as noted above.

124.    The Defendant's articulated reasons for its actions were pretexts for unlawful actions.

125.    Plaintiff's race and color were the contributing and motivating factor in Defendant's decision to discriminate against him.

126.    Defendant harassed and discriminated against Plaintiff because of his race and color.

127.    Defendant limited, segregated, or classified Plaintiff in a way which would deprive or tend to deprive his of employment opportunities or otherwise adversely affect his status as an employee, because of his race and color.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

128. Defendant discharged and discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of his race and color.

129. Defendant, by its actions and failures to act, including but not limited to those described above, has consistently discriminated against the Plaintiff on account of his race and color on a continuing basis as an act or part of a pattern or practice of discrimination by the Defendant.

130. Defendant has engaged in a pattern and practice of discrimination limiting, segregating, or classifying its employees in a way which would deprive or tend to deprive them of their employment opportunities or otherwise adversely affect their status as an employee, because of their race and color as it relates to employment.

131. Defendant has engaged in a pattern and practice of discrimination by discharging and discriminating against its employees with respect to their compensation, terms, conditions, or privileges of employment, because of their race and color.

132. Plaintiff has suffered financial loss, decreased business opportunities, emotional pain, suffering, inconvenience, loss of enjoyment of life and incurred attorney fees because of the actions of the Defendant.

133. The Defendant's conduct was outrageous because of the Defendant's evil motive or reckless indifference to the Plaintiff's rights.

134. Defendants' actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of Plaintiff, and entitle Plaintiff to an award of punitive damages.

135. Plaintiff will incur costs and attorney's fees due to the actions of Defendants.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

**WHEREFORE**, the Plaintiff Anthony Pruitt prays this court after a trial by jury, for which a jury is hereby demanded, to find that the Defendant XPO Logistics Freight, Inc. has violated the rights of the Plaintiff as set forth above; that a Judgment be entered ordering Defendant to make Plaintiff whole for the loss of income he has suffered as a result of the unlawful acts of discrimination,  including back pay from the time of the unlawful discrimination with interest thereon and fringe benefits, front pay, compensatory damages, damages for past and future mental anguish, inconvenience, loss quality of life, and pain and suffering, punitive damages in the maximum amount allowed by law, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, in an amount to be determined at trial, in excessive of $25,000.00; Allow Plaintiff the costs of this action, including reasonable attorney fees and expenses incurred; award interest on all amounts, and to Grant such additional and affirmative relief as the Court may deem just and proper.

## COUNT II – VIOLATIONS OF THE MISSOURI HUMAN RIGHTS ACT FOR RETALIAION

136.    Plaintiff restates all previous paragraphs of his petition herein.

137.    This count is authorized and instituted under the Missouri Human Rights Act (MHRA), Section 213.010 R.S.Mo. *et seq.*

138.    Plaintiff timely filed charges of discrimination with the EEOC which was dually filed with the Missouri Commission on Human Rights.

139.    At all relevant times herein, the Defendants were employers as defined by the MHRA.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

140.    Plaintiff is a member of the class of people intended to be protected by the Missouri Human Rights Act, including, section 213.010, *et seq.*

141.    Defendants retaliated against Plaintiff because of his complaints of discrimination and exercising his rights under the MHRA including:

a.  Reprimanding Plaintiff;

b.  Harassing Plaintiff;

c.  Suspending Plaintiff;

d.  Assigning Plaintiff less desirable job assignments;

e.  Assigning Plaintiff heavy loads;

f.  Requiring Plaintiff to unload trucks without assistance;

g.  Requiring Plaintiff to ask permission to use the restroom;

h.  Requiring Plaintiff to ask permission to go to lunch;

i.  Requiring Plaintiff to ask permission to leave;

j.  Requiring Plaintiff to take a 30-minute lunch while allowing Caucasian workers to take longer lunches;

k.  Harassing Plaintiff;

l.  Allowing Plaintiff's coworkers to harass Plaintiff;

m.  Accusing Plaintiff of being disruptive;

n.  Failing to investigate Plaintiff's complaints of discrimination;

o.  Terminating Plaintiff.

142.    Defendants and its agents and employees subjected Plaintiff to discriminatory and retaliatory actions as stated above.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

143.    The Defendant's retaliation against Plaintiff affected a term, condition, or privilege of his employment.

144.    Defendants took discriminatory actions towards the Plaintiff regarding his job duties by terminating Plaintiff from his employment, and by retaliating against the Plaintiff because of his complaints of discrimination as noted above.

145.    Defendants actions were directly and causally connected to Plaintiff's opposition of practices prohibited by the MHRA as noted above.

146.    Defendants retaliated and discriminated against Plaintiff because he opposed practices prohibited by Chapter 213 R.S.Mo. and/or because he filed a complaint, testified, assisted, or participated in investigations, proceedings or hearings conducted pursuant to Chapter 213 R.S.Mo.

147.    The Defendant's articulated reasons for its actions were pretexts for unlawful actions.

148.    Plaintiff's opposition to practices prohibited by Chapter 213 of the Missouri Revised Statutes was a contributing and motivating factor in Defendant's retaliation against him.

149.    Plaintiff was discriminated against and terminated by the Defendants because of his complaints of discrimination and for exercising his rights under the Missouri Human Rights Act.

150.    Defendant limited, segregated, or classified Plaintiff in a way which would deprive or tend to deprive his of employment opportunities or otherwise adversely affect his status as an employee because of his complaints of discrimination and for his exercising his rights under the Missouri Human Rights Act.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

151.    Defendant discharged and discriminated against Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of his complaints of discrimination and for his exercising his rights under the Missouri Human Rights Act.

152.    Defendant, by its actions and failures to act, including but not limited to those described above, have consistently discriminated against the Plaintiff on account of complaints of discrimination and for his exercising his rights under the Missouri Human Rights Act on a continuing basis as an act or part of a pattern or practice of discrimination by the Defendants.

153.    Defendant has engaged in a pattern and practice of discrimination limiting, segregating, or classifying its employees in a way which would deprive or tend to deprive them of their employment opportunities or otherwise adversely affect their status as an employee, because of their complaints of discrimination and for their exercising their rights under the Missouri Human Rights Act.

154.    Defendant has engaged in a pattern and practice of discrimination by discharging and discriminating against its employees with respect to their compensation, terms, conditions, or privileges of employment, because of their complaints of discrimination and for their exercising their rights under the Missouri Human Rights Act.

155.    Plaintiff has suffered financial loss, decreased business opportunities, emotional pain, suffering, inconvenience, loss of enjoyment of life and incurred attorney fees because of the actions of the Defendant.

156.    The Defendant's conduct was outrageous because of the Defendant's evil motive or reckless indifference to the Plaintiff's rights.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

157.    Defendant's actions were intentional, willful, knowing, wanton and malicious, and in flagrant disregard for the rights of Plaintiff, and entitle Plaintiff to an award of punitive damages.

158.    Plaintiff's complaints of discrimination were a contributing factor, was the motivating factor and the exclusive cause for Defendant's discrimination and/or discharged against Plaintiff.

159.    Plaintiff will incur costs and attorney's fees due to the actions of Defendant.


**WHEREFORE**, the Plaintiff Anthony Pruitt prays this court after a trial by jury, for which a jury is hereby demanded, to find that the Defendant XPO Logistics Freight, Inc. has violated the rights of the Plaintiff as set forth above; that a Judgment be entered ordering Defendant to make Plaintiff whole for the loss of income he has suffered as a result of the unlawful acts of discrimination,  including back pay from the time of the unlawful discrimination with interest thereon and fringe benefits, front pay, compensatory damages, damages for past and future mental anguish, inconvenience, loss quality of life, and pain and suffering, punitive damages in the maximum amount allowed by law, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, in an amount to be determined at trial, in excessive of $25,000.00; Allow Plaintiff the costs of this action, including reasonable attorney fees and expenses incurred; award interest on all amounts, and to Grant such additional and affirmative relief as the Court may deem just and proper.


## DEMAND FOR A JURY TRIAL

Plaintiff hereby request a trial by jury as to all issues triable by jury.

Electronically Filed - City of St. Louis - December 10, 2020 - 03:24 PM

Respectfully submitted,

**KASPER LAW FIRM, LLC**

By: */s/ Kevin J. Kasper*
Kevin J. Kasper, #52171
Ryan P. Schellert, #56710
3930 Old Hwy 94 South - Suite 108
St. Charles, MO 63304
Ph: 636-922-7100
Fax: 866-303-2874
Email: KevinKasper@KasperLawFirm.net
Email: RyanSchellert@KasperLawFirm.net

*ATTORNEYS FOR PLAINTIFF*